**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Frederick J. Klorczyk (State Bar No. 320783)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
         fklorczyk@bursor.com
         treyda@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE BEETS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOLINA HEALTHCARE, INC.,<br><br>Defendant. | Case No.  16-cv-05642-CAS-KS<br><br>**DECLARATION OF THOMAS A. REYDA IN SUPPORT OF PLAINTIFF'S MOTION FOR MODIFICATION OF THE SCHEDULING ORDER**<br><br>Hon. Christina A. Snyder |

I, Thomas Reyda, declare as follows:

1. I am an attorney at law licensed to practice in the State of California, I am admitted to the bar of this Court, and I am an attorney with Bursor & Fisher, P.A., counsel of record for Plaintiff. I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2. Defendant began its production of documents on September 7, 2018, and completed its intended production on October 31, 2018. Plaintiff's counsel met and conferred with Defendant regarding identified deficiencies on September 17, 2018 and October 10, 2018. Defendant's further thwarted its discovery obligations by searching for calls only made by the Healthcare Management Group. As a result, Defendant has produced 4,866 pages of information related to the single campaign in June 2016 despite the existence of over 100 other campaigns since 2016 alone where similar telephone technology was used.

3. On October 11, 2018, Plaintiff drafted and sent a L.R. 37-1 letter to initiate a discovery dispute regarding Defendant's production deficiencies. A true and correct copy of the October 11, 2018 letter is attached hereto as Exhibit A.

4. On October 22, 2018, Defendant responded with a letter of its own. A true and correct copy of the October 11, 2018 letter is attached hereto as Exhibit B.

5. On December 21, 2018, Plaintiff served a second L.R. 37-1 letter on Defendant further detailing the discovery dispute. A true and correct copy of the December 21, 2018 letter is attached here to as Exhibit C.

6. The parties thereafter met and conferred repeatedly to resolve this discovery dispute without Court involvement. The parties met and conferred on January 2, January 4, and January 8, 2019. During the January 4 meet and confer, Defendant offered to provide Plaintiff with additional information regarding the nature of telephone dialing campaigns it runs. Plaintiff agreed to hold off on involving the Court to review this additional information. On January 8, 2019,

1  Defendant provided Plaintiff with some of this campaign information verbally over
2  the phone and requested additional time to put this information into a letter format.
3  *Id*.  Plaintiff agreed, but indicated her intent to seek a modification of the scheduling
4  order given the looming class certification deadline of February 22, 2018.  At this
5  time, Defendant could not indicate whether it would oppose such a motion.

6         7.      The Parties met and conferred on January 14, 2019, wherein Plaintiff
7  maintained her discovery position and reasserted her intention to seek a modification
8  of the scheduling order.  Defendant again requested additional time to respond, and
9  on January 18, 2019, served Plaintiff with a letter (1) detailing its discovery position
10  and (2) indicating it would oppose Plaintiff's request for modification to scheduling
11  order.  A true and correct copy of the January 18, 2019 letter is attached hereto as
12  Exhibit D.

13         8.      After Defendant's January 18, 2019 letter, Plaintiff intends to initiate
14  Magistrate Judge Stevenson's discovery dispute mechanism at the earliest possible
15  time.  Magistrate Judge Stevenson's standing order requires the parties to meet and
16  confer immediately before contacting the clerk to schedule a telephonic meet and
17  confer with the Court.  Defendant is not available to meet and confer until tomorrow,
18  January 22, 2019.  Plaintiff intends to initiate the discovery process at that time.

19        I declare under penalty of perjury under the laws of the United States and the
20  States of California that the foregoing is true and correct.  Executed on January 21,
21  2019, in Walnut Creek, California.

22
23                          */s/Thomas A. Reyda*_____
                            Thomas A. Reyda
24
25
26
27
28

**EXHIBIT A**



Fred Klorczyk <fklorczyk@bursor.com>

---

## Beets v. Molina Healthcare, Case No. 16-cv-05642-CAS-KS

**Frederick Klorczyk** <fklorczyk@bursor.com>                       Thu, Oct 11, 2018 at 5:22 PM
To: Kathleen Hartnett <khartnett@bsfllp.com>, Kaitlyn Murphy <kmurphy@bsfllp.com>, Quyen Ta <Qta@bsfllp.com>
Cc: "L. Timothy Fisher" <ltfisher@bursor.com>, Joel Smith <jsmith@bursor.com>, Yeremey Krivoshey
<ykrivoshey@bursor.com>

Kathleen,

I am following up on our September 17, 2018 and October 10, 2018 meet and confer calls pursuant to Local Rule 37-1 in an attempt to avoid motion practice.  As previously discussed, we believe Defendant's qualified agreement to only produce documents "regarding the campaign at issue for the June 15, 2016 call to Plaintiff's alleged phone number" is improper.  Accordingly, we'd like to get some clarification as to Defendant's position on certain points.

First, will Defendant produce documents and information related to all autodialer campaigns from July 28, 2012 to present?  This information is responsive to Request Nos. 11-12 among others.  My understanding is that Defendant will only produce documents related to the June 2016 autodialer campaign.  Please confirm.

Second, will Defendant produce call logs/records for all calls regardless if they were autodialed or "manual" calls from July 28, 2012 to present?  This information is responsive to Request No. 13 among others.  My understanding is that Defendant will only produce documents related to autodialed calls from the June 2016 campaign.  Please confirm.

Third, we believe Defendant's interrogatory responses need to be supplemented.  Many of Defendant's RFP responses are qualified agreements to produce documents "regarding the campaign at issue for the June 15, 2016 call to Plaintiff's alleged phone number."  Request Nos. 11-17, 20-22.  We believe this qualification is improper.  Please confirm Defendant will produce responsive documents for all campaigns and calls from July 28, 2012 to the present, not just those "regarding the campaign at issue for the June 15, 2016 call to Plaintiff's alleged phone number."  Similarly, other of Defendant's RFP responses are qualified agreements to produce documents "concerning the HEDIS and/or Health Management/Health Education groups."  Request Nos. 3-4, 7, 9-10.  We believe this qualification is also improper.  Please confirm that Defendant will produce responsive documents from July 28, 2012 to the present from each Molina group that made outbound calls, not just the "HEDIS and/or Health Management/Health Education groups."  Please further confirm that Defendant will supplement all responses with these qualifications by October 18, 2018.

Fourth, we believe Defendant's Interrogatory responses need to be supplemented as many contain the qualification "regarding the campaign at issue for the June 15, 2016 call to Plaintiff's alleged phone number" (Interrogatory Nos. 5, 9, 11-12) or "during the time of the calls alleged in Plaintiff's complaint" (Interrogatory Nos. 6, 7).  We believe these are improper for the reasons discussed above.  For example, will Defendant supplement its response to Interrogatory Nos. 5-7 to include all telephone dialing equipment and software that any group used to place calls from July 28, 2012 to present?  As another example, will Defendant supplement its response to Interrogatory No. 9 to identify all third parties who made calls on Defendant's behalf from July 28, 2012 to present?  Please confirm Defendant will supplement all of these qualified responses by October 18, 2018.

Finally, as we previously noted, many of Defendant's RFP responses fail to indicate whether Molina would produce responsive documents.  Request Nos. 5, 6, 9-10, 15-17, 19, 22.  Similarly, some of Defendant's Interrogatory responses are non-responsive.  Interrogatory Nos. 8, 12.  Please confirm Defendant will supplement these responses by October 18, 2018.

Thanks,
Fred

--
Frederick J. Klorczyk III
Bursor & Fisher, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, California 94596
925-300-4455 (tel)
925-407-2700 (fax)
fklorczyk@bursor.com
www.bursor.com

PRIVILEGED COMMUNICATION
This email may contain confidential material or other matter protected by the attorney-client privilege.  Unless you are the addressee (or are authorized to receive this email for the addressee), you may not copy, use or distribute it.  If you receive this email in error, please contact the sender immediately and permanently delete the email from any and all storage devices under your control.

**EXHIBIT B**



October 22, 2018

<u>VIA EMAIL</u>

Scott A. Bursor
L. Timothy Fisher
Frederick J. Klorczyk III
Yeremey O. Krivoshey
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
scott@bursor.com
ltfisher@bursor.com
fklorczyk@bursor.com
ykrivoshey@bursor.com

> **Re:**  *Beets v. Molina Healthcare, Inc.*, No. 16-cv-05462-CAS-KS (C.D. Cal.)

Dear Counsel,

I write in response to Fred's email dated October 11, 2018, in which you raise a number of issues and questions about Defendant Molina Healthcare Inc.'s ("Molina's") discovery responses to date, following our previous phone conferences with you.

<u>Procedural Background</u>

As you know, there is no discovery cutoff provided for in the court's scheduling order in this matter, and your class certification motion is not due until February 22, 2019. Molina has engaged in an extensive investigation in order to respond to your discovery requests and follow-up questions and, as we have informed you, is producing documents on a rolling basis. Including today's production, Molina has made 3 productions of 610 documents totaling 2,855 pages. These documents inform the issues described in your October 11 email. Molina expects to complete its production in response to Plaintiff's current requests by the end of November 2018. Including because Molina's production is continuing as we investigate the additional questions and issues you have raised, we do not believe the parties are at an impasse on the issues you have raised. We remain willing to meet and confer in order to reach a mutually acceptable resolution.

I also note that your email invokes LR 37-1. To the extent you intended your email to serve as the letter required under LR 37-1 requesting a meet and confer in advance of motion practice, it fails to meet the requirements of the local rule. Specifically, you did not "provide any legal authority which [you] believ[e] is dispositive of the dispute as to that issue/request" or "specify the terms of the discovery order to be sought." Until you provide that information, the parties will not be able to fully meet and confer about the issues you have raised.

October 22, 2018
Page 2

**Plaintiff's Allegations and Molina's Investigation and Production**

Before individually addressing the specific issues you raise, it is important to place Plaintiff's requests in context. The Complaint's exclusive basis for a claim under the TCPA is that "[i]n April 2016, Defendant called Ms. Beets on her cellular telephone from (562) 435-3666 at least twice using an autodialer and/or an artificial or prerecorded voice." The Complaint then lists two incoming calls, one from April 12, 2016 and one from April 13, 2016. With respect to these two calls, the Complaint alleges that "[w]hen Ms. Beets answered calls from Defendant, there was a pause before a recorded message began playing, indicating the use of an automatic telephone dialing system." As we have reported to you previously, these allegations are false. Molina's investigation has revealed (and the documents provided to you by Molina reflect) that the two calls placed by Molina identified in your complaint were to a (213) number *provided by a Molina member*, and those calls *did not use an autodialer or an artificial or prerecorded voice*. Rather, they were calls that Molina professionals *manually dialed* in order to provide healthcare information to a Molina member through *live calls*. As we have explained to you, the (213) number that Plaintiff claims as hers was provided to Molina by a Molina member both through the State of California's Medicaid application process and through other contacts between the member and Molina.

Notwithstanding the Complaint's false allegations, Molina undertook a comprehensive, good-faith investigation to determine any calls Molina made to the (213) number. In the course of that investigation, we have determined that there is only *one* potentially autodialed call to the (213) number, which occurred on June 15, 2016. That call was from Molina's Health Management department, which provides health information to Molina members. The Health Management department ordinarily does not use autodialing to reach members, but apparently did so in June 2016, as part of an effort to reach up to approximately 6,500 Molina members with healthcare information relevant to them. Our investigation to date indicates that the June 15, 2016 call to the (213) number, like other calls in the June 2016 outreach, did not involve an artificial or prerecorded voice. Because that call was for a healthcare purpose, and because Molina had prior express consent of a Molina member to call the (213) number, that call cannot be the basis for TCPA liability. Molina therefore will be entitled to summary judgment.

Notwithstanding that Plaintiff failed to plead any autodialed call in the Complaint, and that the only potentially autodialed call to the (213) number was a June 15, 2016 healthcare-related call that *Molina* identified for *Plaintiff*, Molina has told you that it is producing documents concerning to the Health Management department's June 2016 outreach effort—including available call records for the up to approximately *6,500* Molina members whom Molina attempted to reach to provide healthcare information. That is not a "qualified agreement" as your email states; rather, Molina is actively producing these documents. Molina disputes that Plaintiff will be able to certify a class based on this effort, but nonetheless, Molina will produce information related to that group, which is the only putative class that Plaintiff conceivably could seek to represent.

October 22, 2018
Page 3

Plaintiff now seeks to turn Molina's good faith on its head by arguing that documents related to the June 2016 outreach to **6,500** Molina members are not enough, and that Plaintiff wants all records involving **any** autodialed calls made by Molina, regardless of whether they have any connection to any autodialed call potentially made to Plaintiff.  Plaintiff has not articulated the relevance of such information to any class that Plaintiff could seek to represent.  The June 2016 call is the only call by Molina to the (213) number potentially involving an autodialer.  The vast discovery now apparently sought by Plaintiff is therefore irrelevant.  Likewise, the expense and burden it would impose are greatly disproportionate to any potential benefit.

**Plaintiff's October 11, 2018 Questions**

The first four questions in your email all concern whether Molina will produce documents concerning autodialed calls beyond the June 2016 campaign by Molina's Health Management department, which is the only autodialing effort by Molina that included a call to the (213) number.  As we stated during our meet and confer, and as explained further above, your request for information about **any** autodialing by Molina from July 2012 to present— regardless of any connection to the **one** potentially autodialed call from Molina to the (213) number in June 2016—is overbroad, unduly burdensome, and disproportionate to the needs of the case, as it seeks information that is irrelevant to Plaintiff's specific claims or any class she could conceivably represent.  Molina is a large healthcare company that serves millions of members and makes a large variety of calls in a large variety of circumstances.

Notwithstanding that the Complaint falsely alleged that the (213) number received autodialed calls using a prerecorded or artificial voice in April 2016, Molina's good faith investigation revealed a potentially autodialed call to the (213) number in June 2016 by Molina's Health Management department.  Molina is actively producing documents related to that June 2016 outreach effort and will inform you when its production of such documents is complete; Molina expects to complete that production by the end of November 2018.  Molina also is searching for any additional campaigns involving autodialing by the Health Management department (which did not typically use autodialing) from July 2012 to present, and it will update you once it determines whether any additional campaigns exist; it also expects to conclude that review by the end of November 2018.

You have not explained why Plaintiff would be entitled to documents about autodialing beyond those concerning campaigns related to the call to the (213) number.  We remain willing to continue to confer with you on this issue, including to assess any specific argument of relevance you have to justify your request.

First and Third Questions.  You request documents related to "all autodialer campaigns from July 28, 2012 to present"; you also request that Plaintiff's interrogatory responses be supplemented to account for autodialing beyond the June 2016 campaign and for the work of Molina departments other than those that placed calls to the (213) number.  As explained above, you have failed to provide any justification for your requests for information about autodialing

October 22, 2018
Page 4

beyond the June 2016 campaign that involved a call to the (213) number.  Moreover, Molina is investigating whether there are any additional autodialing campaigns by the Health Management department from July 28, 2012 to present, and will provide you that information as soon as it is available, and in any case by no later than the end of November 2018.  We remain willing to meet and confer further if you have specific arguments of relevance for information about autodialing that is unrelated to any calls to the (213) number or for information about Molina departments that is unrelated to calls to the (213) number.

Second Question. You ask if Molina will "produce call logs/records for all calls regardless if they were autodialed or 'manual' calls from July 28, 2012 to present," and state your understanding that Molina "will only produce documents related to autodialed calls from the June 2016 campaign."  Your understanding is incorrect.  With respect to calls made to the (213) number (and to other numbers associated with the Molina member who provided the (213) number to Molina), Molina's production is not limited to June 2016.  Molina has produced (and will further produce if its investigation reveals additional documents) documents reflecting calls to the (213) number regardless of time period and documents reflecting calls to the other numbers associated with the member who provided the (213) number regardless of time period. You already have such documents in your possession. *See, e.g.*, MOLINA000030 (Molina's call records for the member who provided Molina with the (213) number). As explained above, all of these calls were manually dialed other than the one June 2016 call.

Fourth Question. In addition to your general request for autodialing documents unrelated to any call to the (213) number, you raise two specific questions about Molina's interrogatory responses:  whether Molina will provide information about "all telephone dialing equipment and software that any group used to place calls from July 28, 2012 to present" and whether Molina will "identify all third parties who made calls on Defendant's behalf from July 28, 2012 to present"?  Although Plaintiff has not provided any justification for such requests beyond information related to calls to the (213) number or as part of the June 2016 campaign, Molina is investigating whether there is any additional information or documents available on these specific questions, and will provide any such information  by the end of November 2018.

Fifth Question. Your final question asks whether Molina will supplement its responses to nine specific RFPs and two specific Interrogatories. Given the breadth of the requests at issue, and the lack of explanation in your email, Molina respectfully suggests that a further telephonic conference would be a more efficient way to discuss your inquiries.

RFPs 5-6 seek all communications, contracts, or agreements between Molina and any third party that provided Molina with telephone dialing equipment or software used to make phone calls during the class period.  As we stated during our September 17 meet and confer, this request as phrased is overbroad, would impose an undue burden, and largely seeks irrelevant information.  For example, Molina's contracts and communications with its phone providers have nothing to do with calls to the (213) number.  This is especially true given that this request seeks information about systems beyond those covered by the TCPA. You indicated you would

October 22, 2018
Page 5

consider an alternative phrasing of these RFPs and we said Molina would consider such alternative phrasing if you proposed it in writing. We await your alternative proposal.

Regarding RFPs 9-10, 15-17, 19, 22, and Interrogatories 8 and 12, Molina continues to investigate whether any such responsive documents exist and will provide you updates as they are available. Molina expects to globally supplement its written discovery responses when it concludes its document production in response to Plaintiff's current requests, which it currently expects to do by the end of November 2018.

### Deficiencies in Plaintiff's Production

During our meet and confer on October 10, we also discussed several deficiencies in Plaintiff's production. We now provide written follow-up regarding those gaps.

First, Plaintiff's document production to date has (quite surprisingly) not included *any* phone records—including with respect to the calls at issue in the Complaint. Particularly because the (213) number was provided to Molina by a Molina member, Plaintiff's phone records concerning this number are highly relevant. You explained that Plaintiff had not retained any such records and that you have subpoenaed Plaintiff's phone provider—MetroPCS—to obtain her phone records. After we spoke on October 10, you informed us by email on October 18 that Plaintiff had asked MetroPCS to get her records without a subpoena but they told her that a subpoena was required. You also said that you had contacted MetroPCS to expedite the subpoena response and they told you to follow up this week. Please provide us a further update at the end of this week. As you can imagine, these phone records are critical to Plaintiff's ability to prosecute this case.

Second, Plaintiff's response to Molina's Interrogatory 2 indicates that she was involved in prior litigation, but Molina cannot access those materials through publicly available sources. Please provide those materials including any pleadings, correspondence, discovery, settlement agreements, and other non-privileged documents relating to these claims. *See* Request for Production Nos. 1, 21.

Third, we noted that Plaintiff's response to Interrogatory 5 was written in an ambiguous way that left open the possibility that she did not control the (213) phone number continuously from 2012 to the present. Please confirm in writing whether there were any gaps in Plaintiff's ownership of that number from 2012 to present.

Please let me know your availability for further discussion of these issues.

Sincerely,

*/s/ Kathleen R. Hartnett*

Kathleen R. Hartnett

**EXHIBIT C**

# BURSOR & FISHER
### P.A.

1990 N. CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

THOMAS A. REYDA
Tel: 925.300.4455
Fax: 925.407.2700
treyda@bursor.com

December 21, 2018

*Via Email*

Kathleen Hartnett
435 TassoStreet
Suite 205
Pablo Alto, CA 94301
(t) +1 650 798 3508

Re:      *Beets v. Molina Healthcare, Inc.*, No. 16-cv-05462-CAS-KS (C.D. Cal.)

Dear Counsel,

I write to address several outstanding matters regarding Plaintiff's written discovery, Plaintiff's subpoenas, and Defendant's proposed stipulation re the protective order.

## Plaintiff's Outstanding Written Discovery

I write to follow up with you regarding Plaintiff's October 11, 2018 Local Rule 37-1 letter. As previously identified, Plaintiff intends to move for a Court order to (1) strike Defendant's inappropriate general objections and global specific objections; (2) overrule Defendant's qualified production of documents related only to the June 2016 HEDIS Campaigns (RFP Nos. 3, 4, 7, 9-17, 20-22); (3) order defendant to produce all call logs for the putative class period; and (4) strike Defendant's qualified responses to Interrogatory Nos. 5-7, 9, 11, 12. Please let me know when in the next ten days you are available to meet and confer regarding these matters. Plaintiff's current positions regarding these disputes are laid out below.

Plaintiff will ask the Court to strike Defendant's inappropriate general objections and global specific objections. For each of the disputed discovery requests, Defendant's objections are based on boilerplate general and specific objections that are copied verbatim from one objection to the next. First, Defendant has effectively waived any objection to the production of non-privileged documents or information because, as a matter of law, boilerplate objections cannot support withholding documents. General objections are invalid and "tantamount to making no objection at all." *Bess v. Cate*, 2008 WL 5100203, at *4 (E.D. Cal. Nov. 26, 2008). The same rule applies to boilerplate specific objections. "Proper objections 'show' or 'specifically detail' why the disputed discovery request is improper." *Collins v. Landry's Inc.*, 2014 WL 2770702 at *3 (D. Nev. June 17, 2014).

     Second, putting aside their boilerplate nature, Defendant's specific objections fail as a matter of law on other grounds as well.  For instance, Defendant objected that the discovery requests are "overbroad, unduly burdensome, and disproportionate to the needs of the case."  It has long been clear," however, "that a party claiming that discovery imposes an undue burden must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."  *Sullivan v. Personalized Media Comms., LLC*, 2016 WL 5109994, at *3 (N.D. Cal. Sept. 21, 2016); *see also Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032-33 (E.D. Cal. 2010) ("As a threshold matter, the Governor's objection is insufficient, as an objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence").

     Moreover, Defendant's burden objections are tied to its position that the requested discovery is irrelevant.  But Plaintiff's claims are not so fact limited.  The complaint alleges that Defendant called her "at least twice" using an autodialer and/or an artificial or prerecorded voice without her prior express written consent.  Complaint ¶ 13.  Defendant's opinions that these calls (1) did not violate the TCPA and (2) are not typical of the class Plaintiff seeks to represent are immaterial to its discovery obligations.  "A discovery dispute [] is not the vehicle to litigate the merits of Plaintiff's personal claims against Defendant."  *Cahill v. GC Servs. Ltd. P'ship*, 2018 WL 1791910, at *3 (S.D. Cal. Apr. 16, 2018).  In any event, "[t]he scope of discovery under Federal Rule of Civil Procedure 26(b) is broad.'"  *Kaur v. City of Lodi*, 2015 WL 1240842, at *2 (E.D. Cal. Mar. 16, 2015).  This is because "relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

     Plaintiff will also ask the Court to overrule Defendant's qualified production of documents related to the June 2016 HEDIS Campaigns (RFP Nos. 3, 4, 7, 9-17, 20-22).  Defendant refuses to produce documents or information in response to a number of requests beyond "documents concerning to [sic] the Health Management department's June 2016 outreach effort."  Defendant puts the cart before the horse, concluding—without explanation—that a class related to the June 2016 campaign is "the only putative class that Plaintiff conceivably could represent" and limiting its production accordingly.  Yet, one of the primary purposes of discovery in class action cases is to furnish Plaintiff with information sufficient to determine the scope of the putative class and Plaintiff's adequacy as a class representative.  "Consequently, the discovery must be broad enough to give the plaintiffs a realistic opportunity to meet [the certification] requirements." *U.S. E.E.O.C. v. ABM Indus. Inc.*, 2008 WL 5385618, at *4 (E.D. Cal. Dec. 23, 2008) (quotation omotted).

     It is not Defendant's place to define the contours of the putative class.  Indeed, Defendant's concerns about Plaintiff's typicality are an insufficient basis for limiting discovery. *See Cahill v. GC Servs. Ltd. P'ship*, 2018 WL 1791910, at *3 (S.D. Cal. Apr. 16, 2018). Defendant concedes that it called Plaintiff using an autodialer as part of a June outreach campaign.  Defendant cannot just decide class certification is inappropriate because of unspecified differences between its calling campaigns that may or may not exist.  Indeed, Courts routinely certify classes that consist of multiple campaigns. *W. Loop Chiropractic & Sports*

*Injury Ctr., Ltd. v. N. Am. Bancard, LLC*, 2017 WL 404896, at *1 (N.D. Ill. Jan. 30, 2017). *See also Alpha Tech Pet, Inc. v. Lagasse*, 2016 WL 4678316 (N.D. Ill. Sept. 7, 2016); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, LLC*, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012); *Bridgeview Health Care Center, Ltd. v. Clark*, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp.2d 802 (N.D. Ill. 2008)").

      Plaintiff will further ask the Court to order production for all call loges for the putative class period. The call logs go to the heart of Plaintiff's case and are critical for determining damages at trial. Numerous courts adjudicating similar TCPA claims have overruled relevance objections to the production of call logs. For example, in *Webb v. Healthcare Revenue Recovery Group LLC*, 2014 WL 325132, *2-*3 (N.D. Cal. Jan. 29, 2014), the District Court upheld the Magistrate Judge's conclusion that outbound call lists were relevant to numerosity and that the outbound call lists would also "tend to prove or disprove whether the [plaintiff] is typical of the class, and whether there are questions of fact common to the class." *See also Haghayeghi v. Guess?, Inc.*, 168 F.Supp.3d 1277, 1278-1281 (S.D. Cal. 2016) (finding that outbound text lists were relevant to commonality and "relevant and proportional to the needs of the case"); *accord, e.g.*, *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, 2014 WL 3894348, *2 (S.D. Cal. June 12, 2014); *O'Shea v. Amer. Solar Solution, Inc.*, 2016 WL 701215, at *3 (S.D. Cal. Feb. 18, 2016).

      Courts have likewise overruled privacy objections like those raised by Defendant here. *See Thrasher v. CMRE Financial Services, Inc.*, 2015 WL 1138469, at *3 (S.D. Cal. Mar. 13, 2015) ("The disclosure of phone numbers and names does not constitute a serious invasion of privacy and is commonplace in class actions . . . Even though CMRE's clients are health care providers, the court finds that production of a call list does not contemplate disclosure of confidential medical information protected by HIPAA."); *Gossett v. CMRE Financial Services*, 142 F.Supp.3d 1083, 10887 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims" and that "phone numbers and related information are distinguishable from medical records and histories and thus not subject to the same privacy protection"). Indeed, there is a stipulated protective order in this case. Defendant agreed to the terms of the protective order, and cannot explain why those terms are now insufficient.

      Further, there is no reason to believe that producing the call logs for the entire class period is meaningfully more burdensome than producing samples. Courts routinely hold that defendants cannot hide behind burden and cost objections in an attempt to forgo the production of class-wide call data. *See, e.g., Webb*, 2014 WL 325132, at *2-*3; *Haghayeghi*, 2016 WL 1056547, at *2-*3; *O'Shea*, 2016 WL 701215, at *3; *Gossett*, 142 F.Supp.3d at 1086-87; *Thrasher*, 2015 WL 1138469, at *1-*3; *Stemple v. QC Holdings, Inc.*, 2013 WL 10870906, at *2-*6 (S.D. Cal. June 17, 2013). For instance, Magistrate Judge Stanley Boone of the Eastern District of California granted a motion to compel the production of virtually identical information as requested in Requests No. 13-14, including documents that identify the *call recipients* that received calls using a defendant's telephone dialing equipment and documents that identify *all calls that were actually made*. *Mora v. Zeta Interactive Corp.*, 2017 WL 1187710, at *2-6 (E.D. Cal. Feb. 10, 2017); *Mbazomo v. ETourandTravel, Inc.*, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) ("Court agrees with the weight of authority on this

matter that call logs and dialing lists are relevant to [the] commonality" prong of the class certification inquiry.") (Quotation omitted).  In fact, Defendant has not even shown how producing call logs for the entire class period is meaningfully more burdensome than producing the initial sample already produced in this case.

Finally, Plaintiff will ask the Court strike Defendant's qualified responses to Interrogatory Nos. 5-7, 9, 11, 12.  The objections used to justify the qualified responses fail for the same reason as Defendant's boilerplate relevance and burden objections to Plaintiff's RFPs. *See Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999).  Indeed, Defendant's objections must explain how an interrogatory is overly broad or unduly burdensome.  *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 458 at n. 4 (D.D.C. 2002).  *See also Cahill v. GC Servs. Ltd. P'ship*, 2018 WL 1791910, at *1 (S.D. Cal. Apr. 16, 2018) (rejecting "proportionality objection because Defendant did not offer any explanation of what burden would be imposed on Defendant were it required to respond to these discovery requests [regarding the number of calls made using an autodialer]").

## Plaintiff's Call Records

I also write this letter in response in response to the December 5, 2018 letter Plaintiff received from Defendant Molina Healthcare Inc. ("Molina") regarding purported inadequacies in Plaintiff's production.  Namely, Defendant's letter identifies Plaintiff's phone records for the (213) number as outstanding.  Unfortunately, these phone records are not in Plaintiff's possession.  As you note in your letter, Plaintiff undertook to subpoena these records from MetroPCS in good faith.  MetroPCS has refused to produce the call records in question without a court order.  The December 11, 2018 response of MetroPCS is attached to this email.  The call records at issue are not in Plaintiff's possession.  A court order is thus required.  Accordingly, these documents are equally available to both parties, if Defendant still contends it needs these documents then it should obtain them directly from MetroPCS.  With regards to Plaintiff's subscription to Sprint for cellular service, that service was discontinued several years before Defendant called Ms. Beets and are not relevant to the claims alleged in the complaint. Nonetheless, Plaintiff diligently undertook to look through her records and was unable to find any records within her possession relating to the cellular service she received from Sprint.

## The Subpoena Issued to Mr. Luna

Finally, I also write to follow up with you regarding your December 19, 2018 email regarding the subpoenas Plaintiff issued to Mr. Luna.  Plaintiff has not yet successfully served Mr. Luna.  Plaintiff will provide Defendant with notice of any changes to the noticed deposition. Plaintiff is also willing to agree to Defendant's proposed procedure for dealing the confidentially of any third-party materials.

        Please let me know if Defendant believes there are any additional discovery matters that are still outstanding that are not addressed in this letter.  I look forward to speaking with you about these various issues.

                                Very truly yours,


                                Thomas A. Reyda
                                Counsel for the Plaintiff

**EXHIBIT D**



BOIES
SCHILLER
FLEXNER

January 18, 2019

**VIA EMAIL**

Scott A. Bursor
L. Timothy Fisher
Frederick J. Klorczyk III
Yeremey O. Krivoshey
Thomas Reyda
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

scott@bursor.com
ltfisher@bursor.com
fklorczyk@bursor.com
ykrivoshey@bursor.com
treyda@bursor.com
reyda@bursor.com

Re: *Beets v. Molina Healthcare, Inc.*, No. 16-cv-05462-CAS-KS (C.D. Cal.)

Dear Counsel:

This letter responds to your letter dated December 21, 2018, and follows up on my letter of January 11, 2019 and our telephonic conferences on January 2, 4, 9, and 15, 2019. I am writing to make a clear record of our position concerning the matters you have raised.

**Plaintiff's Request for an Extension of the Case Schedule**

Plaintiff's motion for class certification is currently due on February 22, 2019, based on a schedule that the Court set on July 24, 2018, which was jointly proposed by the parties. On our January 4, 2019 call, you requested that we consider a one- to three-month extension of the schedule in this matter, based on your demand for additional discovery not specific to the Molina department that made the alleged call to your client (discussed further below). We cannot agree to the extension for the reasons below.

- We informed you on January 8, 2019 that we had conferred with our client and did not agree to the requested extension, including because you had been on notice since at least Molina's September 7, 2018 discovery responses of Molina's objection to discovery about calls beyond the Health Management Group.

January 18, 2019
Page 2

- Molina confirmed and further explained that position in my October 22, 2018 letter, and otherwise has diligently searched for and produced documents, as described in my December 5, 2018 letter.
- You did not respond to those letters until **December 21, 2018,** threatening a motion to compel the documents that you had long been on notice Molina objected to providing just four days before Christmas. Accordingly, there is no basis for a delay in the current schedule based on your request for further discovery.
- Then, during our January 15, 2019 meet and confer, you informed us for the first time that you plan to seek certification of a "wrong number" class – which is not pled in your complaint.
  - You described a putative class of "all individuals called by Molina using an ATDS who were not the intended recipients."  In any event, you stated that, including based on your newly proposed class definition, you intended to file a motion seeking a three-month extension of the case schedule.

After careful consideration, Molina cannot agree to the requested extension.  During that call I asked your justification for the extension, given that Plaintiff must have known she was not a Molina member when she filed the case.  You indicated that at the time of the complaint filing, Plaintiff did not know that she was not the intended recipient of Molina's call and that perhaps Molina intended to call her as a non-member.

However, Molina informed you as early as its August 1, 2018 discovery responses that "the calls alleged in Plaintiff's Complaint were valid attempts by Molina to reach a Molina member using a telephone number provided to Molina, and were made for the valid purpose of providing" health and wellness services.  (Responses to RFPs 1-18, 20-22).

Molina also stated that the phone number at issue in Plaintiff's complaint "was associated with a Molina member through the State of California's Medicaid enrollment process, and that the same member provided the telephone number to Molina as a callback number." (Response to ROG 4).  The first document in Molina's document production, which was produced to you on September 7, 2018, is a record linking Plaintiff's claimed phone number with the Molina member who provided that number to Molina. (MOLINA000001- MOLINA000030). Including based on these disclosures months ago, we see no reasonable basis for your delay in identifying a claimed "wrong number" class or your request for an extension of the schedule in this case so that you can attempt to certify such a class.

## Molina's Discovery Responses

Although your December 21, 2018 letter lists four categories of claimed issues with Molina's written discovery response and document production, our calls have indicated that there is ultimately one dispute across all of these categories.  Specifically, Plaintiff seeks call-related discovery from Molina for all outbound autodialed calls by Molina for the period July

January 18, 2019
Page 3

2012 through the present (regardless of topic or content), whereas Molina has produced documents related to any "autodialing" campaign[1] run by Molina's <u>Health Management Group</u> from July 2012 to present.

To begin with, and as we reported to you months ago, Molina's investigation has revealed that <u>none</u> of the calls referenced in the complaint were made using an autodialer or a prerecorded voice as alleged. Nevertheless, out of a show of good faith and without waiting for a request from you, Molina sought to determine whether it had ever made any such calls to the (213) number your client claims. As we have previously explained to you, the only "autodialed" call that your client's claimed (213) number received was from the Health Management Group in June 2016. (We have found no evidence of any prerecorded calls to the (213) number.) As reflected by the documents that Molina has produced and as explained during the meet and confer process, the Health Management Group is a specialized component of Molina staffed with health care professionals who contact Molina members to discuss treatment for certain conditions indicated by a member's initial assessment (e.g., pregnancy, depression, diabetes), and to help Molina members take advantage of related health care offerings. Molina did not – as your letter suggests – limit its search of the Health Management Group to June 2016. Rather, it investigated <u>any</u> "autodialing" conducted by that group from July 2012 through the present and determined that the only such campaign was in June 2016.

The June 2016 Health Management campaign attempted outreach to approximately 6,500 Molina members to provide them with health care consults. Although what Plaintiff means by "call logs" in your December 21 letter is unclear, Molina has produced detailed spreadsheets (i.e., "logs") indicating the June 2016 outreach to Molina members. See e.g., MOLINA002843-MOLINA002845. It has not produced records from its Telephony department for the June 2016 Health Management Group outreach, as those records are not as complete or detailed as the spreadsheets that Molina has produced; they do not distinguish between "autodialed" and non-autodialed calls; and they do not identify calls by campaign (and thus would be highly overinclusive). Nonetheless, Molina is willing to supplement its production with Telephony records for all June 2016 outbound calls to the member numbers at issue in the June 2016 outreach by the Health Management Group if Plaintiff agrees that will resolve this discovery dispute. This additional production makes clear that Molina is not refusing to provide "call logs," as your letter incorrectly suggests.

With respect to your broader request for <u>all</u> "call loges [sic] for the putative class period" (2012-present), you have not justified that extremely burdensome request, which seeks information that is irrelevant to any class that Plaintiff could seek to represent and which is vastly disproportionate to the needs of this case, especially prior to any class certification motion.

---

[1] References to Molina "autodialed" calls in this letter concern calls made by Molina's system as disclosed to you. Molina does not concede that its system is an "ATDS" for purposes of the TCPA and expressly reserves the right to argue that its "autodialed" calls do not fall within the statutory definition.

January 18, 2019
Page 4

Plaintiff at most received only <u>one</u> "autodialed" call in June 2016 from one specific Molina department (and that is not even a call that Plaintiff pled in her complaint). Molina is a nationwide healthcare company with nearly 4 million members in 12 states. It has approximately 11,000 employees and makes millions of phone calls a year for a wide range of health-related purposes. As we have explained to you, since 2016 alone, aside from the Health Management outreach involving the (213) number, Molina has had over 100 call campaigns (most run monthly or annually) from many different departments or sub-departments. Molina has Telephony records of at least 6 million outbound calls from 2016 forward. A large number of those records do not distinguish between "autodialed" and non-autodialed calls or identify which if any campaign the call was a part of. Molina does not have Telephony call records prior to 2016 and thus is not withholding such records.

In contrast to the one "autodialed" call to the (213) number from Molina's Health Management Group – so that a health care professional could have a clinical consult with the member who provided the (213) number when enrolling with Molina – other Molina departments make calls for different health-care related purposes, such as new member enrollment, member renewals, and billing questions. Molina provided you with information about the call campaigns from these other groups during our meet and confer on January 9, 2019 and my letter of January 11, 2019. In those communications, I explain how the call campaigns from these other groups are meaningfully different from the June 2016 Health Management group campaign. You have never challenged the differences among these call campaigns. Rather, you have continued to demand all of Molina's call logs from 2012 to present, now apparently seeking to justify them based on your newly conceived "wrong number" class.

Because outbound dial lists for these other departments have nothing to do with the call that Plaintiff allegedly received, and because she would not be an appropriate representative of any class challenging calls other than the type she received, Plaintiff's request for this massive additional discovery is unwarranted. *See Gusman v. Comcast*, 298 F.R.D. 592 (S.D. Cal. 2014) (denying request for outbound call logs in light of defendant's arguments that such discovery is "overbroad in light of Comcast's 22 million subscribers and because the request fails to distinguish between different categories of calls, i.e., collection calls versus marketing calls" and fails to limit to "calls placed from the particular geographic division as the calls placed to Plaintiff"). Although in your December 21, 2018 letter you cite authority for the proposition that call logs are discoverable – and again, per above, Molina has produced relevant call logs – you do not cite authority for the proposition that a TCPA plaintiff can obtain company-wide discovery about all calls made by the company where, as here, plaintiff received only one, discrete type of call and Molina has explained the financial burden of expanding the scope of discovery. Your proposed alternative class definition does nothing to change the irrelevance of the call logs you seek or to limit the discovery burden your overbroad request would impose on Molina. Courts weighing the proper scope of discovery in cases such as this one are guided by the scope of the class that the Plaintiff seeks to certify and deny discovery that goes beyond such scope. *See Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118, No. 3:12-cv-0964 (S.D.

January 18, 2019
Page 5

Cal. July 15, 2013).  In light of your failure to provide a reasonable class definition, tailored to the call that Plaintiff actually received, it would be particularly unfair for Molina to have to undertake the massive and burdensome discovery you now seek.

Finally, your request for discovery about all outbound calls by Molina since 2012 would require Molina to search for and produce not only "call logs" (to the extent they exist for that time period), but documents related to those calls, which will show that the calls were for a healthcare purpose and made with Molina members' consent.  Any assessment of the burden that your requested discovery places on Molina must include the burden of searching for, and producing, this kind of information because this information was requested in Plaintiff's Second Set of Requests for Production, which focus on documents Molina will use to support its affirmative defenses in this case, including evidence that these calls were made for a healthcare purpose and that the individuals who received the calls consented to them. This category of document production would include 834 files (members' enrollment files from the state, showing the phone numbers they provided upon enrollment), member ID cards, and email and other documentary records showing the nature and purpose of the over 100 campaigns and over 6 million calls in Molina's records.  This would be a massive burden.  As we have explained during the meet and confer process, through November 2018 alone, Molina's discovery responses – which have been focused on records related to the June 2016 Health Management Group campaign involving the (213) number – has entailed nearly $150,000 in fees and costs (excluding Molina employee time), interviews of 20 Molina employees, and document collection from dozens of custodians.  Were Molina to undertake a similar effort at your request for the over 100 campaigns and 6 million outbound calls for which it has records during the class period – even though those efforts were not undertaken by the Health Management Group that allegedly called plaintiff – that would require, conservatively, 10 to 100 times the expense to date (i.e., $1.5M – $15M).  There is no basis for imposing that disproportionate burden. Moreover, you have refused to agree to any cost-sharing arrangement for this additional discovery.

**Plaintiff's Discovery Responses**

My December 5, 2018 letter to you inquired not only about Plaintiff's call records, but also other matters raised in my October 5, 2018 letter concerning the inadequacy of Plaintiff's discovery responses.  Your December 21, 2018 letter did not address those matters.  Specifically, my December 5, 2018 letter asked Plaintiff (1) to provide materials related to the other litigation in which she has been involved (Molina's RFPs 1, 21) and (2) to confirm in writing if there were any gaps in ownership of the (213) number from 2012 to present (Molina's Rog 5).

Moreover, it has come to our attention that Plaintiff's list of other litigation in which she has been involved is woefully incomplete.  Her response to Rog 2 indicates three cases beyond the instant matter: *Beets v. Barnhardt* and "two personal injury cases in the Los Angeles area, one in the late 1980s and one in the early 2000s."  However, Plaintiff appears to have been involved in voluminous litigation beyond these matters – potentially over 20 cases – including a

January 18, 2019
Page 6

recently filed class action that has not been disclosed to us, *Beets v. Frontier Communications Corp.*, No. 18stcv00005 (L.A. Sup. Ct.).  We request that Plaintiff promptly amend her response to Rog 2 to accurately reflect her voluminous litigation history and we reiterate our request that she provide non-privileged documents related to all such litigation.

Finally, despite your demand for all of Molina's call records, during our call on January 2, 2019, you confirmed that Plaintiff has no phone records of her own for the time period of the calls in this case, including any documentation demonstrating her ownership of the (213) number during the relevant period.  You indicated you would not oppose any effort by Molina to obtain a court order for the Metro PCS records, but that Plaintiff would not seek such an order.

**Subpoenas**

On our calls, you confirmed that you have not served Mr. Luna based on the re-noticed subpoena, which seeks a deposition on January 25.  You stated that you will promptly notify us if you do.  Based on the non-service to date, Molina understands that no deposition will proceed on January 25.

Additionally, we wish to notify you that Molina intends to depose your client. Out of consideration for her schedule, we are providing advance notice of that intent to find a deposition date that is convenient for her schedule. Please let us know which dates in the weeks of March 4 and March 11 she is available and we will notice her deposition accordingly.

Sincerely,

Kathleen R. Hartnett